IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KENNETH TRUEBLOOD,** ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 05-369 Erie |
| ) | JUDGE SEAN McLAUGHLIN |
| **WARDEN MARILYN BROOKS,** ) | MAGISTRATE JUDGE BAXTER |
| ) | |
| Respondent. ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.     RECOMMENDATION**

It is recommended that the respondent's motion to dismiss this Petition for Writ of Habeas Corpus (Doc. No. 13) be granted, and that a certificate of appealability be denied.

**II.    REPORT**

Kenneth Trueblood is a state prisoner incarcerated at the State Correctional Institution at Albion, Pennsylvania, who asserts that the Pennsylvania Board of Probation and Parole has violated his constitutional rights by refusing to release him on parole. The Commonwealth has responded with a motion to dismiss (Doc. No. 13). Petitioner, in turn, responded to the motion (Doc. No. 16).  The motion and petition are each ripe for disposition.

Petitioner Trueblood is serving a sentence of 5 to 10 years for Rape following a 1998 conviction in the Court of Common Pleas of Philadelphia County, Pennsylvania. Petitioner's request for parole was denied by the Pennsylvania Board of Probation and Parole on December 17, 2001. Trueblood alleges that the Board denied him parole due to his refusal to participate in a Sex Offenders Program.  It is further alleged that, as part of the program, Trueblood would be forced to admit that he committed the rape for which he is incarcerated.  Petitioner argues that forced participation in the program, with the threat of not being eligible for parole, violates his right against self-incrimination, and offends both the Fifth and Fourteenth Amendments.

### A. Exhaustion and procedural default.

Petitioner concedes he has not attempted to appeal the denial of parole in the state courts. The only means for a Pennsylvania prisoner to appeal the denial of parole in state court is through a petition for writ of mandamus in the Commonwealth Court of Pennsylvania. DeFoy v. McCullough, 393 F.3d 439 (3d Cir. 2005). However, this avenue of review is not available to petitioners who, like Trueblood, assert claims other than an *ex post facto* challenge to the parole decision. "[W]e conclude that claims of constitutional violations in the denial of parole in Pennsylvania need not be presented to the state courts via a petition for writ of mandamus in order to satisfy the requirement of exhaustion." Id. at 445. Trueblood is not making an *ex post facto* claim and, accordingly, he was not required to seek relief in the state courts prior to filing the instant petition for writ of habeas corpus.

### B. Merits.
#### 1. Fifth Amendment claim.

Petitioner's first claim is that his Fifth Amendment right against self-incrimination has been violated because, as a prerequisite to obtaining consideration for parole, he is required to complete a treatment program which requires him to detail and admit to the criminal conduct which is the basis of his incarceration. Petitioner's argument fails because the Fifth Amendment does not apply in the context of parole proceedings.

The Fifth Amendment right against self incrimination is violated when compelled statements are used against a person in a criminal case. Chavez v. Martinez, 538 U.S. 760, 766-68 (2003) (plurality opinion); Renda v. King, 347 F.3d 550, 559 (3d Cir.2003). Even if, as petitioner alleges, the Board's requirement that he complete a particular institutional program is the equivalent of a demand that he admit to crimes, whether charged or not, in order to be considered for parole, he has nevertheless not been compelled to be a witness against himself in a criminal proceeding. See Minnesota v. Murphy, 465 U.S. 420, 435 n. 7 (1984)(parole revocation proceeding is not a "criminal proceeding" within the meaning of the Fifth Amendment). Therefore, even accepting petitioner's

allegations as true, the Fifth Amendment is simply not applicable unless and until a statement made by petitioner is used against him in a criminal proceeding.

And, in any event, there is also no "compulsion" for purposes of the Fifth Amendment arising out of the requirements of a prison treatment program. In McKune v. Lile, 536 U.S. 24, 41 (2002), the Court considered a similar claim concerning a prison treatment program which required participating prisoners to disclose prior sexual misconduct, whether charged or uncharged. In determining whether "compulsion" had occurred, the plurality opinion focused on the consequences suffered by a prisoner who refuses to make the required disclosures. In McKune, the consequences included a change in the prisoner's security status, transfer from a minimum security unit to a maximum security unit, and a change from a two-person cell to a four person cell in a more dangerous area of the prison. 536 U.S. at 30-31. The Court concluded that the consequences to the prisoner, while adverse, were not sufficient to constitute compulsion. In reaching this conclusion, the Court cited to Ohio Adult Parole Authority v. Woodward, 523 U.S. 272, 286 (1998), where the Supreme Court found no unconstitutional compulsion when a death row inmate was made to choose between incriminating himself at his clemency interview or having adverse inferences drawn from his silence, and Murphy, supra, where a parolee was asked about uncharged criminal conduct and confessed out of fear that his refusal to answer would have resulted in the revocation of parole and 16 months incarceration.

Petitioner's claim in this case likewise fails. If the threat of additional incarceration (Murphy) or carrying out a death sentence (Woodward) is not sufficient to establish "compulsion" for purposes of the Fifth Amendment, then the consequence suffered by petitioner here, which amounts to the possibility of a denial of parole, also does not rise to the level of compulsion. See Thorpe v. Grillo, 80 Fed.Appx. 215, 220 (3d Cir. 2003)(No Fifth Amendment violation where prisoner's "refusal to admit his guilt and the resulting inability to participate in the treatment program did not extend his term of incarceration or automatically deprive him of consideration for parole."); Folk v. Attorney General of the Commonwealth of Pa., 425 F.Supp.2d 663 (W.D.Pa. 2006) (Gibson, J.)(no compulsion for purposes of Fifth Amendment where consequence of failing to participate were decreased chance of parole); Wolfe v. Pennsylvania Department of Corrections, 334 F.Supp.2d 762,

773 (E.D.Pa. 2004) (No Fifth Amendment violation where participation in program was voluntary and consequences were not severe enough to be compulsion); Boddie v. New York State Division of Parole, 288 F.Supp.2d 431, 441-42 (S.D.N.Y.2003) (reaching same conclusion under New York's parole statute).

Petitioner's refusal to make admissions in the context of the Sex Offenders' Program has, at most, decreased his chances for parole. This decrease in the likelihood of parole is not a severe enough consequence to amount to compulsion under the Fifth Amendment, and his Fifth Amendment claim lacks merit. Folk, supra.

### 2.   Due process claim - participation in prison program.

Although petitioner does not expressly make a due process claim, he does cite to the Fourteenth Amendment. The court will, accordingly, read the petition broadly and will treat it as raising a due process challenge to the requirement that he participate in a Sex Offender's Program in order to be eligible for parole.

"[T]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). Absent the creation of a liberty interest in parole, a state's decision to deny parole does not create any procedural due process protections. Both the federal and Pennsylvania state courts have held that parole is not a constitutionally protected liberty interest under Pennsylvania law. Burkett v. Love, 89 F.3d 135, 139 (3d Cir.1996); Rogers v. Pa. Bd. of Probation and Parole, 555 Pa. 285, 724 A.2d 319, 323 (Pa.1999). Because petitioner cannot establish that he possesses a liberty interest in parole, he has not demonstrated a violation of a protected constitutional right which would allow him to present a procedural due process claim. Accordingly, the Board's decision did not violate petitioner's right to procedural due process.

Petitioner's claim also fails under a substantive due process analysis. The Third Circuit has held that "even if a state statute does not give rise to a liberty interest in parole release under Greenholtz, once a state institutes a parole system all prisoners have a liberty interest flowing

directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons." Block v. Potter, 631 F.2d 233, 236 (3d Cir.1980). The Supreme Court has held that "although a person may have no 'right' to a valuable government benefit, and may be denied it for any number of reasons, 'there are some reasons upon which the government may not rely." ' Burkett, 89 F.3d at 139 (citing Perry v. Sindermann, 408 U.S. 593, 597 (1972)). Under substantive due process, as the term has been construed by the courts, a state may not deny parole on constitutionally impermissible grounds, such as race or in retaliation for exercising constitutional rights. Burkett, 89 F.3d at 140. In addition, a state may not base a parole decision on factors bearing no rational relationship to the interests of the Commonwealth. Block, 631 F.2d at 237.

Here, petitioner complains that he is being required to admit to underlying crimes in this case. The Commonwealth's interest in this regard is to determine petitioner's progress towards rehabilitation. It is certainly legitimate for a state to consider a prisoner's progress in rehabilitative programs before releasing him on parole. See, McGinnis v. Royster, 410 U.S. 263, 277 (1973)(it is legitimate for state to afford prison officials adequate opportunity to evaluate an inmate's rehabilitative progress before considering him for parole eligibility); McKune, 536 U.S. at 47 ("acceptance of responsibility is the beginning of rehabilitation."). Thus, the Board's consideration of petitioner's refusal to admit his crime and accept responsibility for same bears a rational relationship to the Commonwealth's interest in determining whether petitioner has been rehabilitated. Consideration of petitioner's failure to comply with the Sex Offender's Program does not violate petitioner's right to substantive due process.

### C.  Certificate of Appealability.

Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253(as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Amended Section 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." Where the federal district court has rejected a constitutional claim on its merits, "the petitioner must demonstrate that reasonable jurists would find the district

5

court's assessment of the constitutional claims debatable or wrong..." Szuchon v. Lehman, 273 F.3d 299, 312 (3d Cir. 2001) quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000). A petitioner meets this standard if he can show that the issue "is debatable among jurists, or that a court could resolve the issue differently, or that the question deserves further proceedings." McCracken v. Gibson, 268 F.3d 970, 984 (10th Cir. 2001). Under 28 U.S.C. § 2253(c)(3), the district court must identify which specific issues satisfy the standard. Because Petitioner has not made such a showing, a certificate of appealability should be denied.

### III.   CONCLUSION

Wherefore, on the basis of the foregoing, it is respectfully recommended that respondent's motion to dismiss this Petition for Writ of Habeas Corpus (Doc. No. 13) be granted, and that a certificate of appealability be denied.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.


                                                      S. Susan Paradise Baxter
                                                      SUSAN PARADISE BAXTER
                                                      CHIEF UNITED STATES MAGISTRATE JUDGE

Dated: February 28, 2007